# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Indiana University of Pennsylvania,   :
State System of Higher Education,   :
                     Petitioner   :
                                   :
             v.                :     No. 814 C.D. 2018
                                   :     Submitted: December 13, 2018
Unemployment Compensation   :
Board of Review,   :
                     Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                FILED: January 9, 2019

Petitioner Indiana University of Pennsylvania, State System of Higher Education (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board reversed an Unemployment Compensation Referee's decision, which denied Jeannie M. Broskey (Claimant) unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature. For the reasons set forth below, we now affirm the Board's order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Claimant worked for Employer as an Associate Registrar for Student Records. (Reproduced Record (R.R.) at 2a.) Claimant voluntarily separated from Employer on September 29, 2017. (Certified Record (C.R.), Item No. 2 at 2.) On October 22, 2017, Claimant filed for unemployment compensation benefits. (*Id.* at 1.) The Duquesne Unemployment Compensation Service Center (Service Center) issued a determination, finding Claimant ineligible for benefits due to her inability to prove that she had a necessitous and compelling reason for separating from her employment. (C.R., Item No. 4.)

Claimant then appealed the Service Center's decision, and a Referee conducted an evidentiary hearing. (C.R., Item No. 9.) At the hearing, Claimant testified on her own behalf, and Employer presented the testimony of two witnesses. (*Id.*)

Claimant testified that she voluntarily left her job, but she did so because Employer forced her into early retirement. (R.R. at 11a.) During Claimant's employment, she consistently received "exceeds expectations" performance reviews. (*Id.* at 12a.) Employer hired a new Registrar, Jennifer Fedele. (*Id.*) On August 23, 2017, Ms. Fedele accused Claimant of "not stepping up to the plate, not being flexible for the needs of the office, withholding information from her, and not acting like her Associate Registrar." (*Id.* at 13a.) Ms. Fedele allegedly told Claimant that "there were going to be a lot of changes [and], that if [Claimant] wasn't able to adjust, [Claimant] was going to have to think about—."[2] (*Id.*) Ms. Fedele also suggested that Claimant meet with Craig Bickley, Employer's Vice President for Human Resources. (*Id.*) Claimant met with Mr. Bickley and subsequently sent

_____

[2] Claimant testified that Ms. Fedele's statement was an "unfinished sentence." (R.R. at 13a.)

2

Ms. Fedele a memo asking for specific examples and dates to support Ms. Fedele's accusations against Claimant. (*Id.*) Claimant did not receive a response from Ms. Fedele. (*Id.*)

Claimant testified that, on September 8, 2017, she met with Mr. Bickley and Ms. Fedele. (*Id.*) In this meeting, Mr. Bickley stated that "there was a new bus driver . . . [and i]f [Claimant] couldn't get on the bus he was going to leave without her." (*Id.*) During the same meeting, Claimant asked Ms. Fedele what Ms. Fedele's job expectations were for Claimant. (*Id.*) Ms. Fedele stated that she could not answer that question. (*Id.*) On September 15, 2017, Mr. Bickley handed Claimant a letter informing her that she was the subject of an investigation for persistent professional misconduct. (*Id.*) Employer ordered her to leave campus and did not allow her to take anything with her. (*Id.*) Mr. Bickley then informed Claimant that the investigation was serious and could result in her termination. (*Id.*) Mr. Bickley also informed Claimant that she would be interviewed as part of the investigation. (*Id.*) Further, Mr. Bickley stated that, after the investigation, Claimant would be required to meet with Employer's President and Employer's Provost to be informed of the results of the investigation. (*Id.*) Claimant asked if she could have her attorney with her at the meeting with the Provost and President, but Mr. Bickley informed her that she could not. (*Id.* at 14a.) After Employer opened the investigation, Employer revoked Claimant's computer and e-mail access. (*Id.* at 13a.) During the week of September 18, 2017, Claimant was out of the office for a pre-scheduled vacation. (*Id.* at 14a.)

Claimant further testified that Employer subsequently removed Claimant from her office and placed her in a vacant wing of another building on Employer's property. (*Id.*) Employer did not provide her with the tools required to

3

do her job effectively in her new office and tasked her with assignments she had not previously done. (*Id*. at 14a.) Employer did not permit Claimant to retrieve work materials from her previous office without an escort. (*Id*.) Employer did not give Claimant an opportunity to be interviewed concerning the investigation prior to her retirement. (*Id*. at 12a.) After Claimant left employment, Mr. Bickley scheduled a meeting with Claimant for October 6, 2017. (*Id*. at 15a.) On the advice of counsel, Claimant informed Mr. Bickley that she was unavailable for that day but would be available for a meeting with her attorney present. (*Id*.) In response to Claimant's request to reschedule the meeting and attend with her attorney, Mr. Bickley informed Claimant that he no longer needed to meet with Claimant and would send her a letter instead. (*Id*.) Throughout the investigatory process, Employer did not provide Claimant with information concerning the originator of the complaint, specifics of the complaint, or the findings of the investigation. (*Id*. at 12a-15a.)

Claimant testified that she decided to leave her employment on September 28, 2017. (*Id*. at 15a.) Claimant's decision to leave her employment was triggered by Employer's refusal to provide Claimant with any information concerning the allegations and Employer's unwillingness to grant her the opportunity to be interviewed. (*Id*. at 14a-15a.) Claimant was concerned that Employer meant to terminate her employment, because "Pennsylvania is an employment-at-will state." (*Id*. at 15a.) Claimant, therefore, contends she was forced into early retirement, because, had Employer terminated her employment, she would have lost her accumulated sick leave and possibly jeopardized her ability to receive pension benefits. (*Id*.) Furthermore, due to the remoteness of Claimant's new office location, Claimant also feared that Ms. Fedele, Mr. Bickley, or another individual would confront her in her office. (*Id*.)

4

Employer presented the testimony of Mr. Bickley, who testified concerning Employer's investigation and pre-disciplinary procedures. (*Id*. at 18a.) His testimony on this matter is brief:

> . . . . So, when we receive a complaint we do an investigation . . . . Sometimes we may put somebody on administrative leave while we conduct an investigation. We don't always do that. In this case, we did not. It just also so happened she was on vacation the following week while the investigation was taking place. In terms of the notice of the investigation, we communicate that it is a confidential investigation so that there shouldn't be any conversation with anybody that might be a witness. We did explain who those witnesses might be. We also explained that there can be no retaliation against any complainant or anybody that might be talked to as a witness and that if that were to take place, that might result in separate discipline process. So, the investigation then is commenced. We talk to whoever we need to talk to. We do the research that we need to do, and I'll get into the specifics of this case in a minute, but in general, we conduct the investigation. If there are findings, and sometimes there are not, if there are findings like this case being on the academic side, my report would go to the Provost, who was the person who wrote the letter notifying of the complaint. My report will go to the Provost. The Provost and the President would meet and confer, talk to me. They would make a decision as to whether or not discipline were warranted and if they wanted to proceed down that path. Then we go into a pre-disciplinary conference with the individual before any decision on the matters going forward. If there's a decision to move forward with the pre-disciplinary hearing, it's at that point the investigatory materials are released to the respondent, because they need the opportunity to review those documents in order to present their case for the pre-disciplinary conference. Unless there is a decision to move forward, we do not release the investigatory materials simply because we just think that if there's no finding, throwing that out there is just going to fuel the fire that we don't feel is necessary to do. So, that process—in

5

fact, in this particular case, that process was explained to [Claimant] on the 15th by myself when I met with her and gave her that letter.

(*Id*. at 18a-19a.)

Mr. Bickley also testified regarding the chronology of events leading up to Claimant's separation from employment. (*Id*. at 19a.) Between January 2017, when the previous Registrar left Employer's service, and June 2017, when Ms. Fedele arrived, Employer hired a consultant to do an audit report on the Registrar's Office. (*Id*. at 20a.) According to Mr. Bickley, the audit report showed that the Registrar's Office had a dysfunctional senior leadership and needed attention. (*Id*.) Mr. Bickley mentioned the audit report at the September 8, 2017 meeting between Claimant, Ms. Fedele, and Mr. Bickley. (*Id*.) Mr. Bickley believed that the initial dispute was between Claimant and her co-worker, Marcy Rearick, and not between Claimant and Ms. Fedele. (*Id.*) Mr. Bickley confirmed this belief with Claimant and allegedly offered to meet with Claimant and Ms. Rearick to resolve their issues. (*Id*.) Ms. Fedele, instead, agreed to meet with Mr. Bickley and Ms. Rearick. (*Id*.) At the meeting between Ms. Fedele, Ms. Rearick, and Mr. Bickley, Ms. Rearick alleged that Claimant committed records fraud to keep Claimant's son on the Dean's List. (*Id*.) Ms. Rearick made other allegations of improper conduct between Claimant and other employees within the Registrar's Office. (*Id*.) Based on these allegations, Employer had no choice but to investigate. (*Id*.)

Mr. Bickley testified that, during the course of the investigation, Employer revoked Claimant's network and computer access. (*Id*. at 21a.) Mr. Bickley interviewed all current employees and some past employees from the Registrar's office. (*Id*.) Mr. Bickley conducted the interviews during the week that Claimant was on vacation. (*Id*.) Mr. Bickley confirmed that Employer moved

6

Claimant to another office, but did so to protect both Claimant and other employees from allegations of retaliatory conduct. (*Id*.) Claimant decided to retire only three-and-a-half days after returning from her vacation and working in her relocated office. (*Id*. at 22a.)

In response to Claimant's allegations that she received no information concerning the gravamen of the investigation, Mr. Bickley testified that he did not provide her with this information because the investigation was ongoing and no final decision was yet made. (*Id*.) Further, for fear of retaliatory actions, Employer does not release the statements collected during an investigation to the subject of the investigation even after the investigation is concluded. (*Id*.) Lastly, Employer took no disciplinary action against Claimant and did not give Claimant an ultimatum. (*Id*.)

The Referee issued a decision, finding Claimant ineligible for unemployment compensation benefits due to Claimant's lack of a necessitous and compelling reason for separating from her employment. (C.R., Item No. 10.) Claimant then appealed to the Board, which reversed the Referee's decision and issued its own findings of fact. (C.R., Item No. 12.) The Board concluded that Claimant was eligible for benefits pursuant to Section 402(b) of the Law. (*Id*.) In so doing, the Board issued the following findings of fact:

1. Indiana University of Pennsylvania employed the claimant beginning September 13, 2004, finally as associate registrar for student records.

2. The claimant consistently received exceptional performance reviews.

3. In June 2017, the employer hired a new registrar to become the claimant's supervisor.

4. On August 23, 2017, [Ms. Fedele] accused the claimant of "not stepping up to the plate, not being

7

flexible for the needs of the office, withholding information from her, and not acting like her Associate Registrar," instructed her to go to the human resources department, and advised ["]there were going to be a lot of changes" and if she "wasn't able to adjust, [she] was going to have to think about," without finishing the sentence.

5. The claimant met with [Mr. Bickley] and requested specific examples and dates of the accusations against her.

6. On September 8, 2017, the claimant, [Mr. Bickley], and [Ms. Fedele] met, and [Mr. Bickley] said, "there was a new bus driver. If the claimant couldn't get on the bus, he was going to leave without [her]."

7. When the claimant asked [Ms. Fedele] exactly what was expected of her, she was not given clear instruction.

8. On September 15, 2017, [Mr. Bickley] notified the claimant she was being investigated for "persistent professional misconduct," directed to leave the campus without taking anything with her, and warned to not retaliate against any coworkers.

9. The claimant was locked from her computer and e-mail.

10. The claimant asked if she could see the specifics of the investigation and the accuser.

11. [Mr. Bickley] told the claimant she would be interviewed during the investigation and would be told of the consequences of the investigation after its conclusion in a meeting during which she could not have counsel present.

12. The claimant was humiliated that she was publicly escorted from her office and her coworkers were advised of the investigation.

13. The claimant took a scheduled one-week vacation and returned to work on September 25, 2017, but was not permitted to return to her office.

14. [Mr. Bickley] advised the claimant the investigation was almost complete and had not substantiated the

8

accusations, but the employer was investigating whether she changed her child's grades when he was a student seven years before.

15. Because the claimant was not permitted to return to her office, she was placed in an abandoned wing of another building with no access to a phone, computer, printer, mail, copier, or scanner.

16. The claimant was given a list of eight tasks to complete, including three she had never performed before.

17. Because the claimant lacked access to various methods of communication, she had difficulty requesting assistance and could not return to her office without an escort.

18. Frustrated that she was not told of the accusations against her or interviewed after over five weeks of an investigation and fearing that further escalation of accusations would jeopardize her pension and receipt of accumulated sick leave, the claimant e-mailed her resignation on September 28, 2017.

(*Id.*)

The Board, in reaching its decision, reasoned:

The claimant resigned because she was frustrated that she was not told of the accusations against her or interviewed after over five weeks of an investigation and feared that further escalation of accusations would jeopardize her pension and receipt of accumulated sick leave. An unjust accusation without opportunity to respond may create a necessitous and compelling reason to quit.

Here, the claimant was accused of unknown impropriety and not given an opportunity to respond, despite requesting the opportunity to do so. Although the employer asserted the accusation against the claimant was baseless, it did not prevent the employer from humiliating and ostracizing her. Specifically, the employer removed the claimant from her workspace and her ability to communicate with coworkers, asked her to perform tasks that she did not have the experience or tools to perform,

9

and implied threats regarding her employment. Under these circumstances, the Board concludes that the claimant had a necessitous and compelling reason to quit.

(*Id.*) Employer now petitions this Court for review.

On appeal,[3] Employer argues that substantial evidence does not exist to support the Board's "finding"[4] that Employer failed to provide Claimant with an opportunity to respond to the allegations against her. Employer also argues that the Board committed an error of law by concluding that Claimant had cause of a necessitous and compelling nature to leave her employment.

We will first address Employer's substantial evidence argument. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*,

_____

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] The Board did not issue a specific finding that Employer failed to provide Claimant with an opportunity to respond to the allegations. Rather, it appeared to make such a finding as part of its reasoning for its decision.

485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Employer argues that substantial evidence does not exist to support the Board's finding that Employer did not provide Claimant an opportunity to respond to allegations against her. At the hearing before the Referee, Claimant testified that she asked to be interviewed concerning the investigation, but Employer did not provide the opportunity until she had already retired. (R.R. at 15a.) Specifically, Claimant testified regarding an incident that occurred on August 23, 2017, between Claimant and Ms. Fedele, during which Ms. Fedele criticized Claimant's work performance. (*Id.* at 13a.) Claimant requested specific examples of poor work performance so she could respond, but Ms. Fedele did not provide any. (*Id.*) Several weeks later, on September 15, 2017, Mr. Bickley presented Claimant with a letter, notifying her that Employer was investigating her. (*Id.* at 13a.) At that time, Mr. Bickley informed Claimant that, as part of the investigation, she would be interviewed. (*Id.*) She had already been scheduled for vacation the following week, so she returned to work ten days later on September 25, 2017. (*Id.*) Upon her return, Mr. Bickley informed her that the investigation was almost complete and so far he had not found anything substantive, but he was still investigating whether she had changed her son's grade seven years ago. (*Id.* at 14a.) Mr. Bickley testified that he

met with every current employee and some past employees in the Registrar's Office as part of the investigation and interview process, but he did so during the week that Claimant was on vacation. (*Id*. at 14a.) Further, Mr. Bickley stated that he presented Claimant with the opportunity to be interviewed after she had retired. (*Id.* at 15a.) In other words, while Claimant was out of the office on vacation, Employer interviewed every current employee of the Registrar's office. Further, Employer consistently denied and ignored Claimant's requests for an opportunity to address the allegations of poor work performance and misconduct until after she retired. The record, therefore, contains substantial evidence to support a finding that Employer did not afford Claimant an opportunity to respond to the allegations levelled against her.

We will now address Employer's argument that the Board erred in concluding that Claimant had cause of a necessitous and compelling nature to leave her employment. Employer essentially argues that unjust accusations do not create such cause, particularly given that Claimant did not face an imminent threat of discharge.

Section 402(b) of the Law, pertaining to voluntary termination without cause of a necessitous and compelling nature, provides, in part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Where a claimant voluntarily separates from employment, the claimant bears the burden of proving that the basis of the decision to separate from employment was a necessitous and compelling one. *Pa. Gaming Control Bd. v. Unemployment Comp. Bd. of Review*, 47 A.3d 1262, 1265 (Pa. Cmwlth.), *appeal denied sub nom. Wyatte v. Unemployment Comp. Bd. of*

12

*Review*, 62 A.3d 381 (Pa. 2012). This burden may be met by showing that the circumstances at the time of the decision produced both a real and substantial pressure to leave the employment and that a reasonable person would have been similarly compelled under the same circumstances.[5] *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 832-33 (Pa. 1977); *Beachem v. Unemployment Comp. Bd. of Review*, 760 A.2d 68, 71 (Pa. Cmwlth. 2000). "Personality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving one's employment." *Wert v. Unemployment Comp. Bd. of Review*, 41 A.3d 937, 940 (Pa. Cmwlth. 2012). We have also stated, however, that "a single accusation, if the circumstances surrounding the incident warrant, *may* produce sufficient pressure to terminate employment that would compel a reasonable person to act." *Sol Neft Sports v. Unemployment Comp. Bd. of Review*, 610 A.2d 539, 541 (Pa. Cmwlth. 1992) (emphasis in original). This Court has addressed a few situations in which accusations and changes in working conditions may create an untenable work environment, such that a claimant may be compelled to leave his or her employment. *See, e.g., Arufo v. Unemployment Comp. Bd. of Review*, 391 A.2d 43 (Pa. Cmwlth. 1978); *Sol Neft Sports*, 610 A.2d 539-41.

In *Arufo*, this Court considered whether a supervisor's remarks to a claimant may constitute a necessitous and compelling reason for the claimant to separate from employment. The claimant in *Arufo* was a bookkeeper whose work became the subject of an audit. After the audit showed that the claimant did nothing wrong, the claimant's supervisor remained unconvinced and accused the claimant of being "guilty until proven otherwise." *Arufo*, 391 A.2d at 44. We concluded that

---

[5] Whether a claimant has cause of a necessitous and compelling nature to voluntarily leave employment is a question of law subject to this Court's review. *Pa. Gaming Control Bd.*, 47 A.3d at 1265.

the employer's conduct compelled the claimant to leave her position. Our rationale behind this conclusion was the nature of the claimant's employment. The employer "entrusted [the claimant] with important duties and responsibilities relating to her employer's business affairs" due to her role as a bookkeeper. *Id*. at 45. The accusation of theft was, therefore, a "personal affront to [the] claimant's character and integrity." *Id*. We opined that there was "nothing more the claimant could do to overcome the suspicions and restore the confidence in her work" after such an accusation. *Id*. Due to the fact that the accusations and suspicions continued, we concluded that the situation was untenable and the Board erred in determining the claimant ineligible for benefits.

Similarly, in *Sol Neft Sports* we were presented with the issue of whether the claimant had a necessitous and compelling reason for leaving her employment where the employer changed the claimant's working conditions and accused the claimant of wrong-doing. The claimant in *Sol Neft Sports* was a secretary for the business, when one of the owners of the business was charged with mail fraud and bribery. At the criminal trial concerning these charges, the claimant testified against the owner. The owner, in his testimony, accused the claimant of falsifying the orders underlying the criminal charge. Further, when the claimant returned to work, the owner's brother—also an owner—made a similar accusation and removed the claimant from her secretarial position. Instead of the secretarial position, the employer assigned the claimant to pricing merchandise. The claimant's employer also changed the claimant's lunch hour and mandated that she eat her lunch with the owners of the business, so that she could no longer eat lunch with her co-workers. The Board concluded—and we agreed—that the accusations, combined with the employer's act of removing the claimant from her secretarial position and

14

placing limitations on where she could take her lunch break, created fears and concerns that would compel a reasonable person under the same circumstances to separate from employment.

Here, we agree with the Board that Claimant had a necessitous and compelling reason to quit. Contrary to Employer's arguments, the possibility of imminent discharge is not a requirement for establishing cause of a necessitous and compelling nature to leave employment. Further, the case law surrounding this situation is not so rigid as to hold that unjust accusations may not provide cause of a necessitous and compelling nature to separate from employment. As Associate Registrar, Employer entrusted Claimant with certain duties and responsibilities. The subsequent investigation and the manner in which Employer handled the investigation created suspicions that would reflect poorly on Claimant's character and integrity. Employer interviewed all of Claimant's co-workers concerning the allegations levelled against Claimant but failed to give Claimant any information concerning the allegations aside from the fact that the allegations were serious. Further, Employer removed Claimant from her office and relocated her to a building where she had no contact with her co-workers and did not have all the equipment necessary to fulfill her work duties. Employer compounded the removal by not permitting Claimant to re-enter her office unless she had an escort. All of these circumstances created an image of suspicion that would call Claimant's integrity into question. Just as in *Arufo* and *Sol Neft Sports*, the accusations levelled against Claimant combined with Employer's actions in response to the allegations created an untenable situation compelling Claimant to leave her employment. We, therefore, conclude that the Board did not err in holding that Claimant had cause of a necessitous and compelling nature to separate from her employment.

15

For these reasons, we affirm the order of the Board.


_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Indiana University of Pennsylvania, : 
State System of Higher Education, : 
                        Petitioner : 
                                   : 
            v.                     :  No. 814 C.D. 2018
                                   : 
Unemployment Compensation          : 
Board of Review,                   : 
                       Respondent  : 

# **O R D E R**

AND NOW, this 9th day of January, 2019, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

P. KEVIN BROBSON, Judge